# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### CLEVELAND DIVISION

| | |
|---|---|
| OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM and OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOTERA HEALTH COMPANY, MICHAEL B. PETRAS, JR., SCOTT J. LEFFLER, MICHAEL F. BIEHL, MICHAEL P. RUTZ, KATHLEEN A. HOFFMAN, RUOXI CHEN, SEAN L. CUNNINGHAM, DAVID A. DONNINI, STEPHANIE M. GEVEDA, ANN R. KLEE, CONSTANTINE S. MIHAS, JAMES C. NEARY, VINCENT K. PETRELLA, WARBURG PINCUS LLC, GTCR, LLC, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS & CO. LLC, JEFFERIES LLC, BARCLAYS CAPITAL INC., CITIGROUP GLOBAL MARKETS INC., RBC CAPITAL MARKETS, LLC, BNP PARIBAS SECURITIES CORP., KEYBANC CAPITAL MARKETS INC., CITIZENS CAPITAL MARKETS, INC., ING FINANCIAL MARKETS LLC, ACADEMY SECURITIES, INC., LOOP CAPITAL MARKETS LLC, PENSERRA SECURITIES LLC, SIEBERT WILLIAMS SHANK & CO., LLC, and TIGRESS FINANCIAL PARTNERS LLC,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association (together, "Plaintiffs"), by and through their counsel, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge.  Plaintiffs' information and belief is based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by Sotera Health Company ("Sotera" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning Sotera; (iv) lawsuits against the Company; and (v) other public information regarding the Company.

## I.   <u>INTRODUCTION</u>

1.      This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired Sotera common stock: (i) pursuant and/or traceable to the Company's initial public offering conducted on or around November 20, 2020 (the "IPO"); (ii) pursuant and/or traceable to the Company's secondary public offering conducted on or around March 18, 2021 (the "SPO," and together with the IPO, the "Offerings"); and/or (iii) between November 20, 2020 and September 19, 2022, inclusive (the "Class Period").

2.      The claims asserted herein are alleged against Sotera and certain of the Company's executives, members of Sotera's Board of Directors that signed or authorized the registration statements for one or both of the Offerings, the Company's private equity shareholders, and the underwriters of the Offerings (collectively, "Defendants"), and arise under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

3.      Sotera provides sterilization and lab testing and advisory services to the medical device and pharmaceutical industries.   The Company operates through three businesses:

Sterigenics, Nordion, and Nelson Labs. Through its Sterigenics brand, which accounts for the majority of Sotera's annual revenues, Sotera provides outsourced terminal sterilization services for the medical device and pharmaceutical markets. Terminal sterilization is the process of sterilizing a product in its final packaging.

4.      The Company's sterilization services rely on three primary technologies, one of which is Ethylene Oxide ("EtO") processing. EtO processing is a gas sterilization process in which pallets of packaged goods are loaded into a chamber that is then injected with EtO gas to penetrate the packaging. That process emits toxic fumes which must be filtered before being released into the air. Sotera, through its Sterigenics business, conducts or has conducted EtO processing at facilities located in Illinois, California, Georgia, and New Mexico.

5.      In August 2006, the U.S. Environmental Protection Agency (the "EPA") published an assessment concluding that EtO was significantly more likely to cause cancer than previously known.

6.      In December 2016, the EPA reclassified EtO as a chemical known to be carcinogenic to humans and increased its estimate of EtO's cancer potency by a multiple of thirty. The EPA has concluded that EtO exposure affects the most vulnerable members of the population, including children, stating that "for a single year of exposure to EtO, the cancer risk is greater for children than for adults . . . because EtO can damage DNA."

7.      In August 2018, the EPA released the National Air Toxics Assessment ("NATA")—a screening tool that estimates cancer risks based on emissions data in tens of thousands of census tracts across the United States. The NATA report revealed that people living in communities near Sterigenics' facilities in Illinois, Georgia, and New Mexico had among the highest cancer rates in the country.

8.      That same month, the Agency for Toxic Substances and Disease Registry of the U.S. Department of Health and Human Services released a report titled "Evaluation of Potential Health Impacts from Ethylene Oxide Emissions."  That report documented the public health impacts of Sterigenics' emissions on the area surrounding its Illinois facility and revealed the staggering and disproportionate risks of cancer in that area, which included several schools and a daycare.

9.      Beginning in September 2018, shortly after the publication of the EPA's NATA report, cancer-stricken plaintiffs filed a surge of lawsuits in Illinois against Sotera, alleging that EtO emissions from the Company's sterilization facility had caused their cancer.

10.     On September 30, 2019, after significant pressure from the public and action taken against the Company by Illinois regulators, Sotera announced the closure of its Illinois facility. Beginning in August 2020, just months before the IPO, cancer-stricken plaintiffs living in proximity to a Sterigenics facility in Georgia filed lawsuits similar to those filed in Illinois.

11.     On November 20, 2020, Sotera conducted its IPO, ultimately selling 53.59 million shares of common stock at $23 per share for gross proceeds of more than $1.2 billion.  Months later, on March 18, 2021, the Company conducted the SPO, through which selling shareholders, including affiliates of Sotera's private equity shareholders, Warburg Pincus LLC ("Warburg Pincus") and GTCR, LLC ("GTCR"), as well as Sotera's CEO, sold 25 million shares of Sotera common stock at $27 per share for $675 million in gross proceeds.

12.     In the Offering Materials (defined below) issued in connection with the Offerings, and throughout the Class Period, Sotera made numerous materially false and misleading representations concerning its emissions control systems and exposure to liability from lawsuits for the Company's failure to limit harmful EtO emissions.  The Company represented that it had

3

"a proactive [environmental, health and safety] program and a culture of safety and quality." In addition, Sotera stated that it employed adequate and effective safeguards to control EtO emissions. Moreover, Sotera and its executives vehemently denied allegations that the Company's EtO emissions from its sterilization facilities caused cancer and other severe health issues in people living in the communities near those facilities.

13.     These and similar statements made throughout the Class Period were false. In truth, Sotera and its senior executives and controlling shareholders knew, or at a minimum, recklessly disregarded, that for years the Company failed to employ effective emissions control systems to prevent the release of excessive amounts of toxic EtO gas from its sterilization facilities. Those deficiencies exposed people living in the surrounding communities to a significantly increased risk of cancer and subjected Sotera to an increased risk of liability from hundreds of EtO-related lawsuits. As a result of these misrepresentations, shares of Sotera stock traded at artificially inflated prices throughout the Class Period.

14.     Investors began to learn the truth on September 19, 2022, when an Illinois state court jury in the first lawsuit arising from Sotera's EtO emissions to go to trial, captioned *Kamuda v. Sterigenics U.S., LLC*, No. 18 L 10475 (Ill. Cir. Ct.) ("*Kamuda*"), found Sotera liable for the plaintiff's cancer. Specifically, the jury awarded the plaintiff $363 million in damages, including $38 million in compensatory damages and $325 million in punitive damages. Of great significance for Sotera investors, the jury cited Sotera's and Sterigenics' "willful and wanton" misconduct in not preventing toxic EtO emissions, and failing to warn about the severe health hazard posed by the Company's Illinois facility. As a result of these disclosures, Sotera's stock price declined by $4.90 per share, or 33.3%, from $14.73 per share on September 16, 2022, to $9.83 per share on September 19, 2022.

15.　　On September 19, 2022, after the market closed, news reports revealed that the jury verdict in the *Kamuda* case was supported by "[e]mails and corporate documents" that showed "the companies knew long ago" about the toxic effects of EtO.  Despite that knowledge, Sotera "delayed installing pollution-control equipment and attempted to undermine federal regulations that would require costly improvements at sterilization facilities."

16.　　The next day, on September 20, 2022, analysts at Goldman Sachs downgraded Sotera stock, noting a significantly greater risk to Sotera in future EtO-related litigation due to facts that emerged in the *Kamuda* case and "possible bands of outcome being so open ended that it creates a material overhang on the stock for the foreseeable future."  As a result of these disclosures, Sotera's stock price declined by an additional $1.63 per share, or 16.6%, from $9.83 per share on September 19, 2022, to $8.20 per share on September 20, 2022.

17.　　Then, on September 21, 2022, analysts at JP Morgan downgraded Sotera stock after finding that "investors are likely to price in this unprecedented ruling as a higher probability of a larger settlement or subsequent payouts of the 700+ remaining individual lawsuits, which [Sotera] could potentially not afford."  As a result of these disclosures, Sotera's stock price declined by an additional $0.88 per share, or 10.7%, from $8.20 per share on September 20, 2022, to $7.32 per share on September 21, 2022—more than 68% below the IPO price of $23 per share, and nearly 73% below the SPO price of $27 per share.

18.　　As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiffs and other Class members have suffered significant losses and damages.

## II.　**JURISDICTION AND VENUE**

19.　　The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o), and Sections 10(b) and 20(a) of the

Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act (15 U.S.C § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

20.     Venue is proper in this District under Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b).  Sotera maintains its headquarters in Broadview Heights, Ohio, which is situated in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

III.    **PARTIES**

A.     **Plaintiffs**

21.     Plaintiffs Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association are governmental employee benefit plans for employees and retirees of Oakland County, Michigan.  As indicated in the certification submitted herewith, Plaintiffs purchased Sotera common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

B.     **Corporate Defendant**

22.     Defendant Sotera is incorporated in Delaware and maintains its corporate headquarters at 9100 South Hills Blvd, Suite 300, Broadview Heights, Ohio.  The Company's

common stock trades on NASDAQ under the ticker symbol "SHC."  As of October 25, 2022, Sotera had over 282 million shares of common stock outstanding, owned by hundreds or thousands of investors.

###     C.     Officer Defendants

23.     Defendant Michael B. Petras, Jr. ("Petras") is, and was at all relevant times, Sotera's Chairman and Chief Executive Officer ("CEO").  Defendant Petras signed the IPO Registration Statement (defined below) and the SPO Registration Statement (defined below) and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.

24.     Defendant Scott J. Leffler ("Leffler") served as Sotera's Chief Financial Officer and Treasurer from April 2017 until July 20, 2022.  Defendant Leffler signed the IPO Registration Statement and the SPO Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.

25.     Defendant Michael F. Biehl ("Biehl") has served as Sotera's Interim Chief Financial Officer since July 20, 2022.

26.     Defendant Michael P. Rutz ("Rutz") has served as President of Sterigenics since October 2020.  Prior to that, Rutz served as Chief Operating Officer of Sterigenics from May 2020 to October 2020.

27.     Defendant Kathleen A. Hoffman ("Hoffman") is, and was at all relevant times, Sotera's Senior Vice President of Global Environmental, Health & Safety.

28.     Defendants Petras, Leffler, Biehl, Rutz, and Hoffman are collectively referred to herein as the "Officer Defendants."  The Officer Defendants, because of their positions with Sotera, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and

institutional investors.  Each of the Officer Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  Sotera and the Officer Defendants are collectively referred to herein as the "Exchange Act Defendants."

### D.     Director Defendants

29.     Defendant Ruoxi Chen ("Chen") is, and was at all relevant times, a Director of Sotera.  Defendant Chen reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Chen signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Chen's behalf as Attorney-in-Fact. Defendant Chen is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.  Defendant Chen also serves as a managing director at Defendant Warburg Pincus.

30.     Defendant Sean L. Cunningham ("Cunningham") is, and was at all relevant times, a Director of Sotera.  Defendant Cunningham reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Cunningham signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Cunningham's behalf as Attorney-in-Fact.  Defendant Cunningham is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings. Defendant Cunningham also serves as a managing director at Defendant GTCR.

31.     Defendant David A. Donnini ("Donnini") is, and was at all relevant times, a Director of Sotera.  Defendant Donnini reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Donnini signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Donnini's behalf as Attorney-in-Fact.  Defendant Donnini is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.  Defendant Donnini also serves as a managing director at Defendant GTCR.

32.     Defendant Stephanie M. Geveda ("Geveda") served as a Director of Sotera from October 2020 until October 7, 2022.  Defendant Geveda reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Geveda signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Geveda's behalf as Attorney-in-Fact.  Defendant Geveda is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.  Defendant Geveda also served as a managing director at Defendant Warburg Pincus until September 2022.

33.     Defendant Ann R. Klee ("Klee") is, and was at all relevant times, a Director of Sotera.  Defendant Klee reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Klee signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Klee's behalf as Attorney-in-Fact.  Defendant Klee is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.

34.     Defendant Constantine S. Mihas ("Mihas") is, and was at all relevant times, a Director of Sotera.  Defendant Mihas reviewed the IPO Registration Statement and the SPO

Registration Statement.  Defendant Mihas signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Mihas's behalf as Attorney-in-Fact.  Defendant Mihas is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.  Defendant Mihas also serves as a managing director at Defendant GTCR.

35.     Defendant James C. Neary ("Neary") is, and was at all relevant times, a Director of Sotera.  Defendant Neary reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Neary signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Neary's behalf as Attorney-in-Fact. Defendant Neary is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.  Defendant Neary also serves as a managing director and partner at Defendant Warburg Pincus.

36.     Defendant Vincent K. Petrella ("Petrella") is, and was at all relevant times, a Director of Sotera.  Defendant Petrella reviewed the IPO Registration Statement and the SPO Registration Statement.  Defendant Petrella signed the SPO Registration Statement, and authorized Defendant Petras to sign the IPO Registration Statement on Defendant Petrella's behalf as Attorney-in-Fact.  Defendant Petrella is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials for the Offerings.

37.     Defendants Petras, Leffler, Chen, Cunningham, Donnini, Geveda, Klee, Mihas, Neary, and Petrella are collectively referred to herein as the "Director Defendants."  Each of the Director Defendants signed or authorized the signing of the IPO Registration Statement and the SPO Registration Statement.  In addition, as directors and/or executive officers of the Company, the Director Defendants participated in the solicitation and sale of Sotera shares to investors in the

IPO and the SPO.  The Director Defendants, because of their positions with Sotera, possessed the power and authority to control the contents of the Offering Materials for the Offerings.  Sotera and the Director Defendants are collectively referred to herein as the "Securities Act Defendants."

**E.   Selling Shareholder Defendants**

38.    Defendant Warburg Pincus is a New York City-based private equity firm. Investment funds and entities affiliated with Warburg Pincus sold Sotera shares offered in the SPO. Those investment funds and affiliated entities include: Warburg Pincus Private Equity XI, L.P., Warburg Pincus Private Equity XI-B, L.P., Warburg Pincus Private Equity XI-C, L.P., WP XI Partners, L.P., Warburg Pincus XI Partners, L.P., and Bull Co-Invest L.P.  Following the IPO, Warburg Pincus, though its investment funds and affiliated entities, beneficially owned approximately 42% of Sotera's outstanding common stock.  Following the SPO, Warburg Pincus, though its investment funds and affiliated entities, beneficially owned approximately 37% of Sotera's outstanding common stock.  Warburg Pincus, through Sotera shares beneficially owned by its investment funds and affiliated entities, had the power to control, and did control Sotera throughout the Class Period.

39.    Defendant GTCR is a Chicago-based private equity firm.  Investment funds and entities affiliated with GTCR sold Sotera shares in the SPO.  Those investment funds and affiliated entities include: GTCR Fund XI/A LP, GTCR Fund XI/C LP, and GTCR Co-Invest XI LP. Following the IPO, GTCR, through its investment funds and affiliated entities, beneficially owned approximately 28% of Sotera's outstanding common stock.  Following the SPO, GTCR, through its investment funds and affiliated entities, beneficially owned approximately 25% of Sotera's outstanding common stock.  GTCR, through Sotera shares beneficially owned by its investment funds and affiliated entities, had the power to control, and did control Sotera, throughout the Class Period.

40.     Defendants Warburg Pincus and GTCR are collectively referred to herein as the "Selling Shareholders."  The Selling Shareholders, through Sotera shares beneficially owned by their investment funds and affiliated entities, controlled Sotera before, during and immediately after both the IPO and the SPO.  Representatives of the Selling Shareholders comprise a majority of the members on Sotera's Board of Directors, and the Selling Shareholders exerted control and influence over the Company throughout the Class Period.

**F.     Underwriter Defendants**

41.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter and joint lead book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, J.P. Morgan was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

42.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter and joint lead book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Credit Suisse was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

43.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter and joint lead book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Goldman Sachs was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

44.     Defendant Jefferies LLC ("Jefferies") served as an underwriter and joint lead book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Jefferies

was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

45.     Defendant Barclays Capital Inc. ("Barclays Capital") served as an underwriter and joint book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Barclays Capital was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

46.     Defendant Citigroup Global Markets Inc. ("Citigroup Global") served as an underwriter and joint book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Citigroup Global was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

47.     Defendant RBC Capital Markets, LLC ("RBC Capital Markets") served as an underwriter and joint book-running manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, RBC Capital Markets was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

48.     Defendant BNP Paribas Securities Corp. ("BNP Paribas") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, BNP Paribas was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

49.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc Capital") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO,

KeyBanc Capital was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

50.     Defendant Citizens Capital Markets, Inc. ("Citizens Capital") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Citizens Capital was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

51.     Defendant ING Financial Markets LLC ("ING Financial") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, ING Financial was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

52.     Defendant Academy Securities, Inc. ("Academy Securities") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Academy Securities was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

53.     Defendant Loop Capital Markets LLC ("Loop Capital") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Loop Capital was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

54.      Defendant Penserra Securities LLC ("Penserra Securities") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Penserra Securities was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

55.      Defendant Siebert Williams Shank & Co., LLC ("Siebert Williams") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Siebert Williams was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

56.      Defendant Tigress Financial Partners LLC ("Tigress Financial") served as an underwriter and co-manager for the IPO and the SPO.  As an underwriter of the IPO and the SPO, Tigress Financial was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO Offering Materials and the SPO Offering Materials.

57.      Defendants J.P. Morgan, Credit Suisse, Goldman Sachs, Jefferies, Barclays Capital, Citigroup Global, RBC Capital Markets, BNP Paribas, KeyBanc Capital, Citizens Capital, ING Financial, Academy Securities, Loop Capital, Penserra Securities, Siebert Williams, and Tigress Financial are collectively referred to herein as the "Underwriter Defendants."

## IV.      **BACKGROUND**

58.      Sotera is a global provider of sterilization solutions, lab testing, and advisory services for the healthcare and pharmaceutical industries.  Sotera's principal business unit is Sterigenics, which, in 2021, accounted for more than 60% of the Company's total net revenues.

59.     Sotera, through its Sterigenics brand, provides outsourced terminal sterilization services for the medical device and pharmaceutical markets.  Terminal sterilization is the process of sterilizing a product in its final packaging, which is an essential, and often government-mandated, last step in the manufacturing process of healthcare products before they are shipped to end-users.

60.     The Company uses EtO processing as one of three methods to sterilize products. EtO processing is a gas sterilization process in which pallets of packaged goods are loaded into a chamber that is then injected with EtO gas to penetrate the packaging.  That process emits toxic fumes which must be filtered before being released into the air.  Sotera conducts, or has conducted, EtO processing at facilities throughout the United States, including, Illinois, California, Georgia, and New Mexico, among other places.

61.     In March 2011, Defendant GTCR acquired Sterigenics for an estimated $675 million.  In May 2015, GTCR sold a majority stake in Sterigenics to Defendant Warburg Pincus. Over the next several years, Sterigenics borrowed at least an additional $1.1 billion to fund cash payouts to owners of GTCR and Warburg Pincus.

62.     In December 2016, the EPA reclassified EtO as a known carcinogen and significantly increased the chemical's estimated cancer potency, finding that the cancer risks posed by EtO exposure are greatest among children "because EtO can damage DNA."

63.     In August 2018, the EPA issued a report revealing that, based on EtO emissions across the United States, people living in communities near Sterigenics' EtO sterilization facilities in Illinois, Georgia, and New Mexico had among the highest cancer rates in the country.

64.     Beginning in September 2018, shortly after the release of the EPA's report, cancer-stricken plaintiffs filed a surge of lawsuits in Illinois state court, alleging that EtO emissions from the Company's sterilization facility had caused their cancer.

65.     On February 1, 2019, in the wake of the first lawsuits filed against Sotera, the Company issued a response to questions from a reporter for *CBS Chicago* regarding Sterigenics' operations.  In the statement, Sotera touted its "safe use of ethylene oxide" as well as its significant investments purportedly "to upgrade . . . and install state-of-the-art systems that allow the company's employees to safely monitor, capture and control more than 99.9% of the [EtO] used in the sterilization process – exceeding regulatory requirements."  The Company also denied claims made by plaintiffs who had sued Sterigenics, characterizing those claims as "misleading and untrue distortions of the facts regarding Sterigenics' operations."

66.     On September 30, 2019, after significant backlash from the public and action by Illinois regulators, Sotera announced the closure of its Illinois facility.

67.     Beginning in August 2020, cancer-stricken plaintiffs filed lawsuits against Sotera in Georgia alleging claims similar to those filed against the Company in Illinois.  Sotera currently faces lawsuits from more than 800 plaintiffs in Illinois and approximately 300 plaintiffs in Georgia related to the Company's EtO emissions.

68.     Despite closing its Illinois facility and assuring investors and the public of the Company's purportedly effective safeguards to limit EtO emissions, Sotera continued to emit dangerous levels of EtO gas from other facilities during the Class Period.  For example, on December 22, 2020, one month after Sotera's IPO, the Attorney General for the State of New Mexico filed a lawsuit against the Company alleging that emissions from Sterigenics' New Mexico sterilization facility had damaged the air quality and materially increased health risks for residents

of the surrounding communities. Beyond the cancer risk identified by data released by the EPA, the New Mexico Attorney General's Office conducted a pre-suit investigation that included a sampling of air within a four-mile radius of the plant for EtO levels, which confirmed the substantial risk to New Mexico residents based on Sterigenics' EtO emissions. Specifically, air samples collected contained concentrations of EtO far exceeding the EPA's threshold level above which cancer risk is considered increased, with one sample finding EtO concentrations 96 times above the EPA's threshold.

69. Moreover, in May 2022, the South Coast Air Quality Management District ("South Coast AQMD"), the regulatory agency responsible for improving air quality for large areas of southern California, issued a notice of violations to Sterigenics' facility in Vernon, California. The South Coast AQMD identified a substantial release of EtO from the facility and found that Sterigenics had failed to maintain its air pollution equipment in good working order and other permit issues. Based on samples of the air outside Sterigenics' Vernon, California facility from April 22, 2022 to July 2, 2022, the South Coast AQMD detected levels of EtO that were as high as 32 times above the allowable limit. Based on that data, in September 2022, the South Coast AQMD issued an order to Sterigenics requiring it to immediately reduce the toxic EtO emissions levels from that facility. Specifically, the order required Sterigenics to immediately upgrade its air pollution control systems, install temporary enclosures—and permanent enclosures within two years—as well as conduct regular air monitoring and an enhanced leak detection and repair system.

## V. MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

70. The Class Period begins on November 20, 2020, the trading day after the SEC declared Sotera's registration statement for the IPO effective. On or around November 20, 2020, Sotera conducted the IPO pursuant to a registration statement that the Company filed with the SEC

on October 23, 2020, and which, after four amendments, was declared effective by the SEC after

the market closed on November 19, 2020 (the "IPO Registration Statement").  On November 23,

2020, Sotera filed a final prospectus for the IPO with the SEC on Form 424B4 (the "IPO

Prospectus"), which formed part of the IPO Registration Statement (collectively, the "IPO

Offering Materials").  By means of the IPO Offering Materials, Sotera offered and sold 53.59

million shares of common stock (which included the underwriters' exercise in full of their option

to purchase an additional 6.99 million shares of common stock) at $23 per share, generating more

than $1.2 billion in gross proceeds for the Company.

71.    The IPO Offering Materials contained untrue statements of material fact and

omitted material facts necessary to make the statements contained therein not misleading.

Specifically, in the IPO Offering Materials, the Company made numerous representations to

investors concerning the Company's standards for safety and emissions control.  For example, the

IPO Offering Materials represented that Sotera is "dedicated to safety and quality."  In the IPO

Offering Materials, Sotera claimed that "[t]o manage [ ] strict regulatory requirements safely and

effectively, [the Company] . . . creates, implements and manages complex quality assurance and

environmental health and safety programs, procedures and control systems."  The IPO Offering

Materials also touted the Company's "[e]xpertise and strong track record in highly regulated

markets," including "the operational discipline that [Sotera] employ[s] to manage intricate quality

assurance and environmental health and safety ("EH&S") programs in [its] own operations."

72.    The IPO Offering Materials further assured investors that Sotera "design[s] and

install[s] emission controls in [its EtO] facilities that often outperform the regulatory standards

that [the Company is] required to meet."  Specifically, the Company represented that "[e]ach of

our [EtO] sterilization facilities utilizes a variety of control technologies (including wet scrubbers,

catalytic oxidizers and dry bed scrubbers) to control these emissions, and we are investing in additional control features to further reduce emissions."  Sotera also stated that "[w]e consistently meet and outperform regulatory emissions control requirements."  Moreover, while the Company acknowledged that it had previously "experienced instances of emissions exceeding applicable standards," Sotera assured investors "none . . . we believe were material."  The Company further stated that "[w]e have made proactive, voluntary investments to enhance emissions controls."

73.     The IPO Offering Materials further represented that "[t]o reduce the risk of noncompliance [with regulatory requirements], [Sotera] employ[s] engineering and procedural controls and pollution control equipment, and undertake[s] internal and external regulatory compliance audits at [its] facilities."  Sotera further represented that the Company has "a proactive EH&S program and a culture of safety and quality across all business units."

74.     In the IPO Offering Materials, Sotera also made statements regarding the hundreds of EtO emissions lawsuits filed against the Company.  Specifically, Sotera downplayed the liability risk it faced, stating categorically that "[w]e deny these allegations."

75.     Following the IPO and throughout the Class Period, Sotera and its senior executives continued to make numerous representations regarding the Company's safety and emissions controls as well as statements regarding the EtO-related lawsuits.  For example, on January 11, 2021, Defendants Petras and Leffler participated in the JP Morgan Healthcare Conference on behalf of Sotera.  During the conference, Defendant Petras represented that the Company's "culture" is "all about safety, quality, accountability, and excellence," which serves as "the foundation for us as an organization."

76.     During the conference, in response to an analyst's question about the risks involved in the lawsuit initiated against the Company by the New Mexico Attorney General, Defendant

Petras sought to assuage concerns, reassuring investors that "[w]e're going to make sure our employees are safe, the communities are safe, and that patients get sterile product, okay, and we will defend these lawsuits very aggressively."

77.     Also, during the conference, in response to an analyst's question about how revised guidelines from the EPA would impact the ongoing and any future EtO emissions lawsuits, Defendant Petras touted the Company's enhancements to its emissions control systems, stating:

> All I can tell you is that we have put in our enhancements in our facilities, we're working aggressively to get those rolled out.  We've put them in, in Atlanta.  And today, in Atlanta, we captured 99.99% of the emissions coming out of the facility, of the [EtO] used.  99.99% of the [EtO] used, we're capturing it to make sure it doesn't get out in emissions.  And we are going to use that as our guiding principle and our practice and protocols as we look at all of our facilities around the United States and we're pursuing that across each of them.  I feel very confident that what the regulators come out in new regards, in new rules and regs, are going to be very closely resembling what we've done in Atlanta.  And it'll further demonstrate our leadership position in this area.

78.     On February 24, 2021, Defendant Leffler participated in the Citigroup Healthcare Services, Medtech, Tools & HCIT Conference on behalf of Sotera.  During the conference, Defendant Leffler touted Sotera's "competitive and comparative advantage when it comes to complying with complex and burdensome regulations."  Defendant Leffler further represented that the Company had the "ability to comply with any regulatory requirement" because Sotera has "a successful record of doing that for many decades."

79.     On March 9, 2021, Sotera filed its annual report with the SEC on Form 10-K for the year ended December 31, 2020 (the "2020 10-K").  In the 2020 10-K, Sotera purported to warn that "[w]hile we strive to comply with these regulatory requirements, we may not at all times be in full compliance and, as a result, could be subject to significant civil and criminal fines and penalties."  The Company assured investors, however, that "[t]o reduce the risk of noncompliance, we employ engineering and procedural controls and pollution control equipment, and undertake

internal and external regulatory compliance audits at our facilities.  We have a proactive environmental health and safety ("EH&S") program and a culture of safety and quality across all business units."

80.     In the 2020 10-K, Sotera also represented that "[e]ach of our [EtO] sterilization facilities utilizes a variety of control technologies (including wet scrubbers, catalytic oxidizers and dry bed scrubbers) to control these emissions, and we are investing in additional control features to further reduce emissions."  Sotera also stated that "[w]e consistently meet and outperform regulatory emissions control requirements."  Moreover, while the Company acknowledged that it had previously "experienced instances of emissions exceeding applicable standards," Sotera assured investors "none . . . we believe were material."  The Company further stated that "[w]e have made proactive, voluntary investments to enhance emissions controls."

81.     On March 9, 2021, Sotera held a conference call with analysts and investors to discuss the Company's financial results for the 2020 fiscal year.  During the call, in response to an analyst's question about the EtO litigation, Defendant Petras stated that the Company was "very comfortable about where we are in that litigation."  Defendant Petras further assured investors that "[w]e have very compliant systems.  It's built into our culture, and we continue to operate with high regard for the regulatory requirements."

82.     On or around March 18, 2021, Sotera conducted the SPO pursuant to a registration statement that the Company filed with the SEC on March 15, 2021 and which the SEC declared effective on March 17, 2021 (the "SPO Registration Statement").  On March 18, 2021, Sotera filed a prospectus for the SPO on Form 424B4 (the "SPO Prospectus"), which incorporated and formed part of the SPO Registration Statement (collectively, the "SPO Offering Materials").  By means of the SPO Offering Materials, selling stockholders, including affiliates of Warburg Pincus and

GTCR, as well as Sotera's CEO, sold 25 million shares of Sotera common stock at $27 per share, resulting in $675 million in gross proceeds.  The IPO Offering Materials and the SPO Offering Materials are referred to herein collectively as the "Offering Materials."

83.     The SPO Offering Materials contained nearly identical statements to those referenced in ¶¶ 71-73, regarding Sotera's safety and emissions control systems.

84.     Moreover, the SPO Offering Materials incorporated by reference Sotera's representations in its 2020 10-K regarding the Company's safety and emissions control systems, which included the same representations set forth in ¶¶ 79-80.

85.     The SPO Offering Materials further incorporated by reference Sotera's representations in its 2020 10-K regarding the hundreds of EtO emissions lawsuits filed against the Company, which included the same representations set forth in ¶ 74.

86.     On May 13, 2021, Sotera held a conference call with analysts and investors to discuss the Company's financial results for the first quarter of 2021.  During the call, in response to an analyst's question about whether the Company's purported investments in emissions control enhancements were assuaging concerns of the plaintiffs in the EtO lawsuits, Defendant Petras stated:

> [W]e're far exceeding the regulatory requirements.  That's just even further insurance around the ability to do that.  I can't speak to the motives or the comfort level of these other parties, because sometimes their motives aren't clearly aligned with ours or the broader healthcare industry.  So, what I'll tell you is we're confident of our solution, and we continue to move forward in making sure we operate in a compliant manner and provide a critical service.

87.     On August 12, 2021, Sotera held a conference call with analysts and investors to discuss the Company's financial results for the second quarter of 2021.  During the call, in response to an analyst's question about Sotera's exposure to risk of actions similar to those in New Mexico, Georgia, and Illinois regarding EtO emissions from the Company's sterilization facilities in other

states, Defendant Petras stated that "I mean I can't predict some of the irrational activity that's happened in the past and what that means before. But what I can tell you is we're in compliance with our permits and the regs, and we continue to provide critical service, if you will, to all the customers in the supply chain."

88. On September 14, 2021, Defendant Leffler participated in the Baird Global Healthcare Conference on behalf of Sotera. During the conference, Defendant Leffler stated that "we believe that our ability to comply with an increasingly burdensome regulatory environment is a competitive differentiator for us." Defendant Leffler also emphasized the Company's "successful track record of delivering [organic and inorganic] growth." Defendant Leffler then represented that "[a]ll of that is grounded in values-based culture," including the Company's "core values" of "safety, quality, accountability, and excellence. That's how we do it and the result is strong financial performance."

89. On September 21, 2021, Defendant Petras participated in the J.P. Morgan U.S. All Stars Conference on behalf of Sotera. During the conference, in response to an analyst's question about Sotera's claims that the plaintiffs in the EtO lawsuits do not have a "meaningful case," Defendant Petras stated: "this is a very low amount of yield. There's no violation of our permits or the laws around [EtO] usage, that's being claimed against us here. People have to show causation. They have to show and demonstrate that this very small amount of [EtO] cause a person's cancer." Defendant Petras further represented that Sotera's sterilization facilities "did not generate enough [EtO] to cause cancer in these plaintiffs" and emphasized that "[w]e're not settling" because "[t]here's been no material awards on a chemical of this low level . . . ."

90. Also, during the conference, Defendant Petras emphasized the Company's commitment and focus on environmental, health, and safety issues. Specifically, Defendant Petras

represented that the Company has a "dedicated focus on those kind of areas, these are things that we're doing day in and day out." Defendant Petras further stated:

> But on environmental, we've got several actions currently in place, the big one being ethylene oxide emissions. But we also have a project called 3R: reduce, reuse, and reclaim around [EtO], how do we reduce the amount of [EtO] being used in our facilities and work in conjunction with our customers and regulators. So, that's something we're doing as well. That's another big aspect of environmental.

91. On March 1, 2022, Sotera filed its annual report with the SEC on Form 10-K for the year ended December 31, 2021 (the "2021 10-K"). In the 2021 10-K, Sotera purported to warn that "[w]hile we strive to comply with these regulatory requirements, we may not at all times be in full compliance and, as a result, could be subject to significant civil and criminal fines and penalties." The Company assured investors, however, that "[t]o reduce the risk of noncompliance, we employ engineering and procedural controls and pollution control equipment, and undertake internal and external regulatory compliance audits at our facilities. We have a proactive environmental health and safety ("EH&S") program and a culture of safety and quality across all business units."

92. In the 2021 10-K, Sotera also represented that "[e]ach of our [EtO] sterilization facilities utilizes a variety of control technologies (including wet scrubbers, catalytic oxidizers and dry bed scrubbers) to control these emissions, and we are investing in additional control features to further reduce emissions." Sotera also stated that "[w]e consistently meet and outperform regulatory emissions control requirements." Moreover, while the Company acknowledged that it had previously "experienced instances of emissions exceeding applicable standards," Sotera assured investors "none . . . we believe were material." The Company further stated that "[w]e have also made proactive, voluntary investments to enhance emissions controls."

93. On March 22, 2022, Defendant Leffler participated in the KeyBanc Capital Markets Life Sciences & MedTech Forum on behalf of Sotera. During the conference, Defendant Leffler

25

reassured investors regarding the EtO emissions litigation, stating "the strength of our arguments and the fundamental righteousness . . . of our position hasn't changed from the IPO" and "we fundamentally feel that the company's arguments are strong and we look forward to the opportunity to sort of prove that out in the cases that are upcoming."

94.     On May 5, 2022, Sotera held a conference call with analysts and investors to discuss the Company's financial results for the first quarter of 2022.  During the call, Defendant Petras stated that "we are confident in our defenses to these claims and the safety of our operations." Defendant Petras further emphasized that "[o]ur company plays a critical role in healthcare and our employees and facilities operate in a safe and compliant manner."

95.     On May 17, 2022, Defendant Leffler participated in the RBC Capital Markets Global Healthcare Conference on behalf of Sotera.  During the conference, Defendant Leffler stated:

> We're making significant investments in our own infrastructure in order to ensure that we are at the forefront of deploying the best technology that's available as far as the mission control system. . . .  Because we believe that the capabilities we have when it comes to complying with complex and burdensome regulations are actually one of our competitive differentiators.  And so, we look forward to the opportunity to demonstrate that as the regulations unfold.

96.     On June 14, 2022, Defendant Petras participated in the Goldman Sachs Global Healthcare Conference on behalf of Sotera.  During the conference, in response to an analyst's question about the EtO-related lawsuits, Defendant Petras stated emphatically that "[o]ur facilities do not cause the cancer here, and that's what's going to be proven in the court of law and the first trials."

97.     On August 4, 2022, Sotera held a conference call with analysts and investors to discuss the Company's financial results for the second quarter of 2022.  During the call, in

providing an update about the EtO-related lawsuits, Defendant Petras reassured investors that "our employees and facilities operate [in] a safe and compliant manner."

98.     Throughout the Class Period, Sotera also made numerous statements in its Global Code of Conduct regarding the Company's purported commitment to environmental, health, and safety concerns.  For example, Sotera's Code of Conduct, which the Company posted to its website during the Class Period, stated that Sotera is "committed to respecting the environment, providing our employees with a safe and healthy place to work and striving to safeguard global health in all that we do."   In particular, the Company represented that it is, and has been, committed to: "[p]rovid[ing] and maintain[ing] facilities and operations where health and safety is promoted and hazards are identified and controlled;" "[m]anag[ing] facilities and operations such that their potential impacts on the environment are controlled and minimized;" "[m]eet[ing] or exceed[ing] applicable . . . [EHS] requirements;" and "[m]onitor[ing] and continuously improv[ing] EHS performance and our EHS management system."

99.     In its Code of Conduct, Sotera also stated that "[i]ndividually and collectively, we work together to build exemplary programs and to achieve performance in EHS that serves as a positive example for other organizations in countries where our Company operates."

100.     The statements set forth above in ¶¶ 70-81 and ¶¶ 83-99 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading.  In truth, long before the IPO, Sotera's executives and controlling shareholders knew of the significant health risks associated with exposure to elevated levels of EtO.  Despite that knowledge, Sotera failed to employ adequate and effective emissions control systems at its sterilization facilities, and often subverted whatever control systems the Company did have, allowing dangerous amounts of toxic

EtO fumes to pollute the air surrounding those facilities and exposing people living in the adjacent communities to significantly increased cancer risks. Moreover, even after Sotera's closure of its Illinois EtO processing plant, the Company continued to operate multiple sterilization facilities that emitted dangerous levels of EtO during the Class Period. In addition, to the extent that the Company purported to warn of liability risks from the EtO cancer-related lawsuits, Sotera failed to disclose the true extent of those risks by withholding information from investors regarding the inadequacy or subversion of its EtO emissions control systems.

## VI.     THE TRUTH EMERGES

101.    The truth began to emerge on September 19, 2022, when a jury in the *Kamuda* case—the first of hundreds of lawsuits against Sotera and Sterigenics to proceed to trial—found that dangerously high EtO emissions from Sterigenics' Illinois facility caused the plaintiff to develop cancer. The jury also found that the failure of Sotera and Sterigenics to prevent emissions of toxic EtO gas and the failure to warn of this severe health hazard was "willful and wanton," demonstrating a conscious disregard for people's safety. Accordingly, the jury ordered Sotera and Sterigenics to pay the plaintiff in *Kamuda* $38 million in compensatory damages and $325 million in punitive damages. This news caused Sotera's stock price to decline by $4.90 per share, or 33.3%, from a closing price of $14.73 per share on September 16, 2022, to a closing price of $9.83 per share on September 19, 2022.

102.    Sotera's stock price continued to decline in the days following the jury verdict, as news reports covering the verdict emerged and as analysts cited that verdict in downgrading the Company's stock. On September 19, 2022, after the market closed, the *Chicago Tribune* published an article detailing the jury verdict in the *Kamuda* case. Significantly, that article was the first to widely report that, during the trial:

Emails and corporate documents highlighted on a courtroom screen showed the companies knew long ago that ethylene oxide, or EtO, is extremely dangerous.  But the companies delayed installing pollution-control equipment and attempted to undermine federal regulations that would require costly improvements at sterilization facilities.

103.    The following day, on September 20, 2022, analysts at Goldman Sachs downgraded Sotera stock and slashed their price target from $23 per share to $9 per share.  The analysts noted that investors would interpret the verdict as implying significantly greater risk for the Company in future litigation "with possible bands of outcome being so open ended that it creates a material overhang on the stock for the foreseeable future."  As a result of these disclosures, Sotera's stock price declined by an additional $1.63 per share, or 16.6%, from a closing price of $9.83 per share on September 19, 2022, to a closing price of $8.20 per share on September 20, 2022.

104.    Then, on September 21, 2022, JP Morgan analysts downgraded Sotera stock and cut their price target from $26 per share to $9 per share as a result of the jury verdict in the *Kamuda* case.  The analysts noted that "investors are likely to price in this unprecedented ruling as a higher probability of a larger settlement or subsequent payouts of the 700+ remaining individual lawsuits, which [Sotera] could potentially not afford . . . ."  This downgrade further impacted Sotera's stock price, which declined an additional $0.88 per share, or 10.7%, from a closing price of $8.20 per share on September 20, 2022, to a closing price of $7.32 per share on September 21, 2022.

105.    On December 20, 2022, after the end of the Class Period, the Illinois state court judge presiding over the *Kamuda* litigation declined Sotera's requests to reduce the punitive damages awarded or order a new trial.  Specifically, the judge found that the defendants in the *Kamuda* case received a fair trial and that the punitive damages awarded by the jury were not "excessive."

106.    All told, the disclosures of Sotera's true culpability and likely financial liability for its toxic EtO emissions caused Sotera's stock price to decline to a price that was more than 68% below the IPO price of $23 per share, and nearly 73% below the SPO price of $27 per share.

**VII.    LOSS CAUSATION**

107.    During the Class Period, as detailed herein, the Exchange Act Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Sotera common stock and operated as a fraud or deceit on the Class (defined below).  Later, when the prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Sotera common stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Sotera common stock during the Class Period, Plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**VIII.    CLASS ACTION ALLEGATIONS**

108.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired Sotera common stock: (i) pursuant and/or traceable to the Company's IPO; (ii) pursuant and/or traceable to the Company's SPO; and/or (iii) during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Sotera and their families and affiliates.

109.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of October 25, 2022, Sotera had approximately 282 million shares of Sotera common stock outstanding, owned by hundreds or thousands of investors.

110.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether Defendants violated the Securities Act and/or the Exchange Act;

(b)    Whether the IPO Offering Materials and the SPO Offering Materials were negligently prepared and contained inaccurate statements of material fact, omitted other facts necessary to make the statements made therein not misleading, and omitted material information required to be stated therein;

(c)    Whether Sotera and the Officer Defendants omitted and/or misrepresented material facts;

(d)    Whether statements made by Sotera and the Officer Defendants omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)    Whether the Director Defendants and the Officer Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(f)    Whether Sotera and the Officer Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(g)    Whether Defendants' conduct impacted the price of Sotera common stock;

(h)    Whether Defendants' conduct caused the members of the Class to sustain damages; and

(i)    The extent of damage sustained by Class members and the appropriate measure of damages.

111.    Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

112.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation.  Plaintiffs have no interests which conflict with those of the Class.

113.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## IX.    INAPPLICABILITY OF STATUTORY SAFE HARBOR

114.    Sotera's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

115.    Sotera and the Officer Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Sotera who knew that the statement was false.  None of the historic or present tense statements made by Sotera and the Officer Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Sotera and the Officer Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X.    PRESUMPTION OF RELIANCE

116.    At all relevant times, the market for Sotera common stock was an efficient market for the following reasons, among others:

(a)     Sotera common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Sotera filed periodic public reports with the SEC and NASDAQ;

(c)     Sotera regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Sotera was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

117.    As a result of the foregoing, the market for Sotera common stock promptly digested current information regarding Sotera from all publicly available sources and reflected such information in the price of Sotera common stock.  Under these circumstances, all purchasers of Sotera common stock during the Class Period suffered similar injury through their purchase of Sotera common stock at artificially inflated prices and the presumption of reliance applies.

118.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on material omissions.  Because this action involves a failure to disclose material adverse information regarding Sotera's business and operations—information that was required to be disclosed—positive proof of reliance is not a prerequisite to

recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the significance of Sotera's exposure to significant liability risk from the Company's excessive EtO emissions and the impact it could have on the Company's business, that requirement is satisfied here.

## XI.     CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 11 of the Securities Act**
**Against the Securities Act Defendants and the Underwriter Defendants**

119.     Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

120.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class who purchased or otherwise acquired Sotera common stock sold in and/or traceable to the IPO and/or the SPO, and who were damaged thereby.

121.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that the defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

122.     Sotera is the registrant for the IPO and the SPO.  The defendants named herein were responsible for the contents and dissemination of the IPO Offering Materials and the SPO Offering Materials.

123.    As the issuer of the shares, Sotera is strictly liable to Plaintiffs and the Class for the misstatements and omissions contained in the IPO Offering Materials and the SPO Offering Materials.

124.    Liability under this Count is predicated on the Director Defendants having signed or authorized the signing of the IPO Registration Statement and the SPO Registration Statement, and the respective participation by all the defendants named in this Count in the IPO and the SPO, which were conducted pursuant to the IPO Offering Materials and the SPO Offering Materials. The IPO Offering Materials and the SPO Offering Materials were false and misleading, contained untrue statements of material facts, and omitted other facts necessary to make the statements not misleading.

125.    Plaintiffs and the Class have suffered damages.  The value of Sotera common stock has declined substantially as a result of the Securities Act Defendants' and the Underwriter Defendants' violations.

126.    Less than one year has elapsed since the time that Plaintiffs discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

127.    By reason of the foregoing, the defendants named in this Count are each jointly and severally liable for violations of Section 11 of the Securities Act to Plaintiffs and the other members of the Class pursuant to Section 11(e).

## COUNT II

**For Violations of Section 12(a)(2) of the Securities Act
Against the Underwriter Defendants**

128.    Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

129.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all members of the Class who purchased or otherwise acquired Sotera common stock in and/or traceable to the IPO and/or the SPO, and who were damaged thereby.

130.    This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that defendants named in this count acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

131.    The Underwriter Defendants were statutory sellers of Sotera shares that were registered in the IPO and the SPO pursuant to the IPO Registration Statement and the SPO Registration Statement and sold by means of the IPO Offering Materials and the SPO Offering Materials.  By means of the IPO Offering Materials and the SPO Offering Materials, the Underwriter Defendants sold millions of Sotera shares through the IPO and the SPO to members of the Class.  The Underwriter Defendants were at all relevant times motivated by their own financial interests.  In sum, the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the stock that was sold in the IPO and the SPO by means of the materially false and misleading IPO Offering Materials and SPO Offering Materials.

132.    The IPO Offering Materials and the SPO Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading.

133.    Less than one year has elapsed since the time that Plaintiffs discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

134.    By reason of the foregoing, the Underwriter Defendants are liable for violations of Section 12(a)(2) of the Securities Act to Plaintiffs and the other members of the Class who purchased or otherwise acquired Sotera common stock in and/or traceable to the IPO and/or SPO, and who were damaged thereby.

**<ins>COUNT III</ins>**

**For Violations of Section 15 of the Securities Act**
**Against the Director Defendants and the Selling Shareholders**

135.    Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

136.    This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class who purchased or otherwise acquired Sotera common stock in and/or traceable to the IPO and/or the SPO, and who were damaged thereby.

137.    This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 15 claim.

138.    As set forth in Count One above, Sotera is strictly liable under Section 11 of the Securities Act for untrue statements and omissions of material fact in the IPO Offering Materials and the SPO Offering Materials.

139.    The Director Defendants, by virtue of their positions, voting power, ownership, rights as against Sotera, and/or specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Sotera within the meaning of Section 15 of the Securities Act.  These defendants also had the power and influence, and exercised the same, to cause Sotera to engage in the acts described herein, including by causing Sotera to conduct the IPO and the SPO pursuant to the IPO Offering Materials and the SPO Offering Materials.

140.    The Selling Shareholders were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Sotera within the meaning of Section 15 of the Securities Act. The Selling Shareholders were the majority owners and controlled the Company before, during and after the IPO and the SPO.  In addition to controlling a majority of Sotera's voting shares, the Selling Shareholders also appointed and had significant influence over Sotera's management and members of its Board of Directors.

141.    By reason of the foregoing, the defendants named herein each were culpable participants in the violations of Sections 11 and 12(a)(2) of the Securities Act as alleged in Counts One and Two above, based on their having signed or authorized the signing of the IPO Registration Statement and/or the SPO Registration Statement, selling Sotera common stock in the IPO and/or the SPO, and/or having otherwise participated in the process that allowed both the IPO and the SPO to be successfully completed.  The defendants named herein are liable for the aforesaid wrongful conduct and are liable, to the same extent Sotera is liable under Section 11 of the

Securities Act, to members of the Class who purchased or otherwise acquired Sotera common stock pursuant and/or traceable to the IPO and/or the SPO, and who were damaged thereby.

## COUNT IV

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against the Exchange Act Defendants

142.     Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

143.     During the Class Period, Sotera and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Sotera common stock at artificially inflated prices.

144.     Sotera and the Officer Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Sotera common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

145.     Sotera and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

146.     During the Class Period, Sotera and the Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading

39

in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

147.    The Officer Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  The Officer Defendants engaged in this misconduct to conceal Sotera's true condition from the investing public and to support the artificially inflated prices of Sotera common stock.

148.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Sotera common stock.  Plaintiffs and the Class would not have purchased Sotera common stock at the prices they paid, or at all, had they been aware that the market prices for Sotera common stock had been artificially inflated by these defendants' fraudulent course of conduct.

149.    As a direct and proximate result of these defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

150.    By virtue of the foregoing, Sotera and the Officer Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## <u>COUNT V</u>

**For Violations of Section 20(a) of the Exchange Act**
**Against the Officer Defendants and the Selling Shareholders**

151.    Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

152.    The Officer Defendants and the Selling Shareholders acted as controlling persons of Sotera within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Sotera, the Officer Defendants and the Selling Shareholders had the power and ability to control the actions of Sotera and its employees.  By reason of such conduct, the Officer Defendants and the Selling Shareholders are liable pursuant to Section 20(a) of the Exchange Act.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiffs and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XIII.  JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Dated: January 24, 2023           Respectfully submitted

*/s/ Scott D. Simpkins*          
Scott D. Simpkins, SBN 66775
**CLIMACO, WILCOX, PECA
  & GAROFOLI CO., LPA**
55 Public Square
Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
sdsimp@climacolaw.com

*Liaison Counsel for Plaintiffs Oakland County
Employees' Retirement System and Oakland County
Voluntary Employees' Beneficiary Association*

Hannah Ross (*pro hac vice* forthcoming)
Avi Josefson (*pro hac vice* forthcoming)
Scott R. Foglietta (*pro hac vice* forthcoming)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiffs Oakland County Employees'
Retirement System and Oakland County Voluntary
Employees' Beneficiary Association*

Aaron L. Castle (*pro hac vice* forthcoming)
**VANOVERBEKE MICHAUD
  & TIMMONY P.C.**
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Plaintiffs Oakland County
Employees' Retirement System and Oakland County
Voluntary Employees' Beneficiary Association*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Joseph Rozell, on behalf of the Oakland County Employees' Retirement System ("Oakland County ERS") and the Oakland County Voluntary Employees' Beneficiary Association ("Oakland County VEBA") hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am Chairman of Oakland County ERS and Oakland County VEBA and I am authorized to sign this certification on their behalf. I have reviewed the complaint and authorize its filing by counsel.

2. Oakland County ERS and Oakland County VEBA did not purchase or sell the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Oakland County ERS and Oakland County VEBA are willing to serve as representative parties on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Oakland County ERS's and Oakland County VEBA's transactions in the Sotera Health Company securities that are the subject of this action are set forth in the chart attached hereto.

5. Oakland County ERS and Oakland County VEBA have sought to serve and were appointed as lead plaintiffs and representative parties on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

*In re Grand Canyon Education, Inc. Securities Litigation*,
No. 20-cv-639 (D. Del.)
*Building Trades Pension Fund of Western Pennsylvania v. Insperity, Inc.*,
No. 20-cv-5635 (S.D.N.Y.)

6. Oakland County ERS and Oakland County VEBA are currently serving as representative parties on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

*Oakland County Voluntary Employees' Beneficiary Association v. Generac Holdings Inc.*, No. 22-cv-1436 (E.D. Wis.)

7. Oakland County ERS and Oakland County VEBA are currently seeking to serve as a lead plaintiffs and representative parties on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Oakland County Voluntary Employees' Beneficiary Association v. Opendoor Technologies Inc.*, No. 22-cv-1987 (D. Ariz.)

8. Oakland County ERS and Oakland County VEBA have sought to serve as lead plaintiffs and representative parties on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew their motion for appointment as lead plaintiffs or were not appointed lead plaintiffs:

   *City of Hollywood Police Officers Retirement System v. Citrix Systems, Inc.*, No. 21-cv-62380 (S.D. Fla.)

9. Oakland County ERS and Oakland County VEBA will not accept any payment for serving as a representative party on behalf of the Class beyond Oakland County ERS's and Oakland County VEBA's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of January, 2023.

Joseph Rozell
Chairman
*Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association*

**Oakland County Employees' Retirement System**
**Transactions in Sotera Health Company**

| Transaction | Date | Shares | Price |
|:---:|:---:|:---:|:---:|
| Purchase | 6/23/2021 | 2,200 | 23.7162 |
| Purchase | 6/24/2021 | 4,926 | 23.8288 |
| Purchase | 6/25/2021 | 6,513 | 24.5065 |
| Purchase | 6/28/2021 | 3,361 | 24.8982 |
| Purchase | 7/13/2021 | 4,000 | 23.4927 |
| Sale | 3/23/2022 | (4,000) | 21.0726 |

**Oakland County Voluntary Employees' Beneficiary Association**
**Transactions in Sotera Health Company**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/23/2021 | 3,881 | 23.7162 |
| Purchase | 6/24/2021 | 8,693 | 23.8288 |
| Purchase | 6/25/2021 | 11,495 | 24.5065 |
| Purchase | 6/28/2021 | 5,931 | 24.8982 |
| Purchase | 7/13/2021 | 6,000 | 23.4927 |